**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 10 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

# UNITED STATES COURT OF APPEALS
# TENTH CIRCUIT

---

STATE OF UTAH,

    Plaintiff-Appellant,

    and

HERMAN BAHE; MARVIN R.
WASH; LESTER WASH; DENISE
WASH; STEPHANIE E. VIGIL;
DIANE EAGLE TOM; LINDA
CLOVER RIVERA; MARLINDA
MOON; EDGAR MOON; DELFORD
MOON; ADRIAN MOON; LENA
KNIGHT; ELDON KNIGHT; EDITH
KNIGHT; LESLIE DAWN EAGLE;
KENNETH W. EAGLE; EDWIN
CLOVER; VERN BEAR; TYRONE
BULLCREEK; MARGENE
BULLCREEK; LISA BULLCREEK;
DAVID BULLCREEK; ABBY
BULLCREEK; COLLEEN BLACK-
BEAR; SAMMY BLACKBEAR, SR.;
UNITED STATES OF AMERICA,

    Plaintiffs,

v.

UNITED STATES DEPARTMENT
OF THE INTERIOR; BUREAU OF
INDIAN AFFAIRS; PHOENIX AREA
DIRECTOR, Bureau of Indian Affairs;
SUPERINTENDENT OF UINTAH

No. 00-4018

AND OURAY AGENCY, Bureau of
Indian Affairs,

       Defendants-Appellees,

PRIVATE FUEL STORAGE,

       Defendant-Intervenor-Appellee,

       and

DAVID L. ALLISON; WAYNE
NORDWALL; BRUCE BABBITT,

       Defendants.

---

Appeal from the United States District Court
for the District of Utah
(D.C. No. 98-CV-380)

---

Philip C. Pugsley, Assistant Attorney General (Jan Graham, Attorney General, with him on the briefs), Salt Lake City, Utah, for Plaintiff/Appellant.

Stephen Roth, Assistant United States Attorney (Paul M. Warner, United States Attorney, with him on the brief), Salt Lake City, Utah, for Defendants/Appellees.

Val R. Antczak (J. Michael Bailey of Parsons, Behle & Latimer, Salt Lake City, Utah, Margaret A. Swimmer, and Joseph D. Fincher of Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., with him on the brief), of Parsons Behle & Latimer, Salt Lake City, Utah, for Defendant/ Intervenor/Appellee.

---

Before **SEYMOUR**, **MCKAY** and **LUCERO**, Circuit Judges.

---

**SEYMOUR**, Circuit Judge.

The State of Utah appeals from the district court's grant of summary judgment to defendants United States Department of the Interior (DOI), the Bureau of Indian Affairs (BIA), and several individuals, and defendant-intervenor Private Fuel Storage, L.L.C. (PFS). For the reasons stated below, we affirm.

**I**

In May 1997, PFS entered into a lease with the Skull Valley Band of Goshute Indians ("the Band") which would allow PFS to store approximately 40,000 tons of spent nuclear fuel on land belonging to the Band. PFS is a limited liability corporation composed of electric utility companies from around the nation. The land involved in the lease is the Skull Valley Reservation in Tooele County, Utah. The lease between PFS and the Band was approved by the BIA Superintendent, contingent upon both the completion of an environmental impact statement and the issuance of a license by the Nuclear Regulatory Commission.

In April and June of 1997, the State submitted requests to the BIA for various documents including the lease between PFS and the Band, pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552. On July 11, 1997, the BIA Superintendent replied to those requests and provided the State with a redacted copy of the lease. The Superintendent stated that the portions of the lease redacted by the BIA were exempt from disclosure under Exemption Four of

-3-

FOIA, which protects certain forms of classified business information, or "trade secrets." The provisions redacted by the Superintendent include some of the most important sections of the lease, including those governing termination of the lease, lease payments, payment of rent and interest, and sovereign immunity.

The State appealed the BIA Superintendent's decision to the appropriate FOIA Appeals Officer within the DOI. After the DOI failed to reply to the State within twenty days, the State exercised its right under FOIA to treat the agency's silence as a denial of the State's appeal and an exhaustion of administrative remedies. The State subsequently filed suit in federal district court challenging the DOI's redaction of the lease. The parties filed cross-motions for summary judgment, as both agreed there were no issues of material fact. The district court granted summary judgment to defendants and the State filed this appeal.

## II

The sole question for our resolution is whether the district court erred in holding that Exemption Four of the FOIA applies to the lease at hand, and if it does, whether courts should apply a "balancing of interests" under that exemption. We "review de novo the district court's legal conclusions that the requested materials are covered by the relevant FOIA exemptions" in cases where, as here, "the district court has granted summary judgment in favor of the

government." *Anderson v. Dep't of Health & Human Servs.*, 907 F.2d 936, 942 (10th Cir. 1990). Summary judgment is granted if a party can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

As a general matter, FOIA requires that federal government agencies "shall make available to the public" a vast array of information concerning the agencies' structure, functions, procedures, and decisions. 5 U.S.C. § 552(a). FOIA protects nine classes of information from this disclosure, however, as enumerated at 5 U.S.C. § 552(b). One type of protected information is "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. §552(b)(4). It is this provision, commonly referred to as Exemption Four, with which we are concerned in this case.

The first step in an Exemption Four analysis is determining whether the information submitted to the government agency was given voluntarily or involuntarily. *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 878-879 (D.C. Cir. 1992) (en banc). The parties agree that the submission at hand was an involuntary one. Since the submission was involuntary, the information is protected from disclosure by FOIA if disclosure will either: "(1) . . . impair the government's ability to obtain necessary information in the future or (2) . . . cause substantial harm to the competitive

position of the person from whom the information was obtained." *National Parks and Conserv. Assoc. v. Morton*, 498 F.2d 765, 770 (D.C. Cir. 1974) (internal footnote omitted).[1]

The defendants argue the lease terms are protected by FOIA under the second prong of the involuntary Exception Four analysis because disclosure will cause substantial harm to PFS's and the Band's competitive positions. As the district court correctly noted, all that the parties need show under this prong "is actual competition and the likelihood of substantial competitive injury." App. at 27 (*citing Gulf & Western Indus., Inc. v. United States*, 615 F.2d 527, 530 (D.C. Cir. 1976)). As the D.C. Circuit has explained, in determining whether a showing of substantial competitive injury has been made, "the court need not conduct a sophisticated economic analysis of the likely effects of disclosure." *Public Citizen Health Research Group v. Food & Drug Admin.*, 704 F.2d 1280, 1291 (D.C. Cir. 1983) (citing *National Parks and Conserv. Assoc. v. Kleppe*, 547 F.2d 673, 681 (D.C. Cir. 1976)). Although "[c]onclusory and generalized allegations of substantial competitive harm . . . are unacceptable and cannot support an agency's decision to withhold requested documents," *actual* economic harm need

---

[1] In addition, one circuit has suggested that if the "governmental interest in administrative efficiency and effectiveness" would be seriously compromised by disclosure, protection from disclosure may be warranted. *Critical Mass*, 975 F.3d at 879. Tenth Circuit law is silent on the matter. We do not rely on this prong in reaching our holding.

not be proved; evidence demonstrating the existence of *potential* economic harm is sufficient. *Public Citizen*, 704 F.2d. at 1291.[2] In support of their argument on this issue, defendants provided the district court with two affidavits, the first from Leon D. Bear, who states he is chairman of the Band, and the second from John D. Parkyn, chairman of the board of managers of PFS. Supp. App. at 285 and 281.

In his affidavit, Mr. Bear states his concern that if the redacted lease information is disclosed, it will give the Band's "competitors valuable information which they could use to negotiate lower payments, and to structure waivers of sovereign immunity, termination provisions, tribal taxes, tribal regulations, and other provisions." *Id.* at 286. Mr. Bear describes his competitors as "[o]ther Indian tribes, non-Indian groups and organizations, and governments." *Id.* He also notes that the Band would be in a weaker position at the bargaining table in negotiating any future deals since its potential partners would know the financial and legal details of the Band's prior business agreements. *Id.* at 286-87.

---

[2]As the parties note, the Second Circuit has recognized that one form of competitive harm can come from political opposition to a project. In *Nadler v. Federal Deposit Insurance Corp.*, 92 F.3d 93, 96-97 (2d Cir. 1996), the court held that release of the information sought under FOIA "might hinder the commercial success of the development project" because of the political opposition to the project mounted by the organization seeking the information. We need not decide whether political opposition alone can constitute competitive harm under Exemption Four because we resolve this case on the basis of traditional concepts of competitive harm.

Finally, he fears that "[r]elease of the withheld information would severely undercut the Band's future business transactions" because the Band would be unable to offer potential partners any assurance of confidentiality. *Id.*

Similarly, Mr. Parkyn notes in his affidavit that the storage of spent nuclear fuel "is a competitive business" and that two competitors of PFS have announced the development of facilities that will compete with PFS. *Id.* at 282. Mr. Parkyn declares that disclosure of the withheld information would give his competitors an unfair advantage "in undercutting prices, structuring their transactions, and marketing." *Id.* He further states that "suppliers, contractors, labor organizations, creditors, and customers of PFS and the facility would also have access to this information and, thereby, would be given an unfair advantage in negotiations with PFS." *Id.* Finally, he asserts that if the current deal with the Band were to fall through, "the release of the withheld information would substantially inhibit the ability of PFS to negotiate with another host because any such candidate would have the exact provisions of this agreement." *Id.* at 282-83.

In response to these affidavits, the State makes a variety of arguments denying the existence of actual competition and arguing that even if actual competition exists, any effect of disclosure on that competition would be negligible. Aplt. Reply Br. at 4-9. The State argues that given "the dangerous nature of the material which is the subject of the Lease . . . regions would be

about as anxious to attract a chance to store spent nuclear fuel as they would be to encourage an outbreak of leprosy." *Id.* at 7. Be that as it may, the defendants have identified actual competitors and projects involving the storage and disposal of spent nuclear fuel. And, as we noted above, in determining whether competition exists, we "need not conduct a sophisticated economic analysis." *Public Citizen*, 704 F.2d at 1291. The affidavits presented by defendants in support of their motion for summary judgment are legally sufficient to demonstrate that actual competition exists and that disclosure would lead to substantial competitive injury. We agree with the district court's holding that defendants have met their "burden of justification by showing that the parties to the Lease have actual competitors and that the parties would suffer harm if the withheld information were released." App. at 29.

Finally, we note that the State makes a strong public policy argument in favor of a rough "balancing of interests" test under Exemption Four, which appears to have been recognized in a rough form by the D.C. Circuit. *See Washington Post Co. v. United States Dept. of Health & Human Servs.,* 865 F.2d 320, 326-28 (D.C. Cir. 1989). We agree in principle with the State that the public interest in disclosure of information regarding the handling, storage, and disposal of dangerous materials such as spent nuclear fuel is high. However, we are persuaded in this case that the competitive disadvantages faced by the parties

to the lease are overwhelming.  As such, we need not reach the issue of whether a balancing test is appropriate under Exemption Four of FOIA.

The judgment of the district court is hereby **AFFIRMED**.