**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 8, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

BLAKE BROWN; DEAN BIGGS;
JACQUELINE DEHERRERA; RUTH
ANN HEAD; MARLENE MASON;
ROXANNE MCFALL; RICHARD
MEDLOCK; BERNADETTE SMITH,

     Plaintiffs - Appellants,

v.

THOMAS E. PEREZ, Secretary of Labor;
UNITED STATES DEPARTMENT OF
LABOR, an agency of the United States;
OFFICE OF WORKERS
COMPENSATION, an agency of the
United States Department of Labor,

     Defendants - Appellees.

No. 15-1023
(D.C. No. 1:13-CV-01722-RM-MJW)
(D. Colo.)

_____

**ORDER**
_____

Before **TYMKOVICH**, Chief Judge, **EBEL**, and **PHILLIPS**, Circuit Judges.
_____

     This matter is before the court on the appellees' *Petition for Panel Rehearing*. We also have a response from the appellants. Upon consideration, and having considered the arguments made on summary judgment, on appeal, and in the petition, we grant panel rehearing to the extent of the changes reflected on pages 2, 21-22, in the revised opinion attached to this order.

The original decision was issued under the mistaken impression that the requested screenshots were preserved and recoverable from electronic storage, and did not require the agency to recreate a document or record. On reconsideration, however, we conclude that Plaintiffs' FOIA request actually requires the agency to recreate images that do not exist in storage for electronic recovery. That was the interpretation of the district court, and that conclusion is supported in the record below by the declaration of Julia Tritz, the Deputy Director for Operations and Claims Management. Because FOIA does not require agencies to create records in response to a request, we now affirm the district court's grant of summary judgment on that issue.

The Clerk is directed to reissue the attached revised opinion forthwith.

Entered for the Court

*Elisabeth A. Shumaker*

ELISABETH A. SHUMAKER, Clerk

2

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

BLAKE BROWN; DEAN BIGGS;
JACQUELINE DEHERRERA; RUTH
ANN HEAD; MARLENE MASON;
ROXANNE MCFALL; RICHARD
MEDLOCK; BERNADETTE SMITH,

     Plaintiffs - Appellants,

v.

THOMAS E. PEREZ, Secretary of Labor;
UNITED STATES DEPARTMENT OF
LABOR, an agency of the United States;
OFFICE OF WORKERS
COMPENSATION, an agency of the
United States Department of Labor,

     Defendants - Appellees.

No. 15-1023

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:13-CV-01722-RM-MJW)**
_____

John S. Evangelisti (Karen Larson, with him on the brief), Denver, Colorado, for
Plaintiffs-Appellants.

Steve Frank, Attorney, Appellate Staff (Benjamin Mizer, Principal Deputy Assistant
Attorney General, John F. Walsh, United States Attorney, Office of the United States
Attorney, Denver, Colorado, and Leonard Schaitman, Attorney, Appellate Staff, U.S.
Department of Justice, with him on the brief), U.S. Department of Justice, Washington,
D.C., for Defendants-Appellees.
_____

Before **TYMKOVICH**, Chief Judge, **EBEL**, and **PHILLIPS**, Circuit Judges.

_____

**EBEL**, Circuit Judge.

_____

Plaintiffs-Appellants Blake Brown, Dean Biggs, Jacqueline Deherrera, Ruth Ann Head, Marlene Mason, Roxanne McFall, Richard Medlock, and Bernadette Smith ("Plaintiffs") appeal a summary judgment order upholding Defendants-Appellees Thomas E. Perez, Secretary of Labor, United States Department of Labor, and the Office of Workers Compensation's ("OWC") (collectively, "the agency") redactions to documents they provided to Plaintiffs pursuant to the Freedom of Information Act, ("FOIA"), 5 U.S.C. § 552. Because FOIA does not require an agency to recreate records, we affirm in part, pertaining to the denial of relief to Appellants on the claimed screenshots. But because we also find that the FOIA exemptions invoked by the agency raise genuine disputes of material fact, we reverse in part and remand for further proceedings on those claims.

## I.     BACKGROUND

Plaintiffs are former federal civilian employees eligible to receive federal workers compensation benefits. See Federal Employees' Compensation Act, ("FECA"), 5 U.S.C. §§ 8102(a), 8103(a), 8133. The relevant federal workers compensation program is administered by the OWC, a subdivision of the Department of Labor. To receive benefits under that program, an injured worker must show a qualifying medical condition supported by a physician's opinion. If there is a disagreement between a worker's treating physician and the second-opinion

2

physician hired by the OWC, an impartial "referee" physician is selected to resolve the conflict. 5 U.S.C. § 8123(a); see also 20 C.F.R. § 10.321. The referee's opinion is frequently dispositive of the benefits decision.

To ensure impartiality, it is the OWC's official policy to use a software program to schedule referee appointments on a rotational basis from a list of Board-certified physicians. Div. of Fed. Emp. Comp., Dep't of Labor, FECA Pro. Man. ch. 3-500 §§ 4-6. When an appointment is needed, the software program searches that list for physicians who practice within twenty-five miles of the injured worker's zip code. Id. If, upon inquiry, every nearby physician proves unwilling or unable to accept the appointment, the scheduling program expands its geographic search radius and continues to search until an available referee is found.[1] Id.

Plaintiffs, however, suspect that the OWC does not adhere to its official policy, but instead always hires the same "select few" referee physicians, who are accordingly financially beholden—and presumably sympathetic—to the agency. Aplt. Br. 7. In support of that contention, Plaintiffs point to evidence that a certain orthopedic physician has repeatedly been selected to evaluate workers in distant zip codes, despite the presence of closer physicians of the same specialty.

To investigate their suspicions, Plaintiffs filed FOIA requests for agency records pertaining to the referee selection process. Although the Plaintiffs'

---

[1] Within a given zip code, the software first selects physicians who have not previously accepted a referee appointment (in alphabetical order), and then selects physicians who have previously accepted an appointment (in reverse chronological order of their most recent appointment date).

individual requests differed slightly, they generally focused on the statistics for referee appointments for orthopedic physicians in Colorado over the previous ten years. In order to target future FOIA requests more effectively, Plaintiffs also requested screenshot printouts showing how the menus of the OWC's scheduling software would appear on a user's computer screen.

In response, the agency released various redacted reports generated by its scheduling software. As relevant to this appeal, the reports contain information regarding the total number of times physicians in the identified specialties have served as referees or have been bypassed, as well as lists showing the patient and date of each referee evaluation performed by the selected physicians within certain timeframes. In general, the physicians' and injured workers' names, addresses, and other identifiers are redacted, although the injured workers' zip codes remain visible. The agency declined to provide printouts of the scheduling program's on-screen menus.

Dissatisfied with that response, Plaintiffs filed this suit challenging the agency's redactions of the doctors' names and addresses from four specific types of reports,[2] as well as the agency's withholding of screen printouts. Plaintiffs contend that they cannot verify their suspicions about the OWC's scheduling practices unless they know how often each physician has been assigned to examine patients outside

---

[2] Specifically, Plaintiffs seek unredacted versions of the "Physician Activity Report," "Physician Usage Report," "Physician Prompt Pay Report," and "Physician History Report." Plaintiffs do not challenge the redaction of the injured workers' information.

4

his or her zip code. For its part, the agency argues that the doctors' names and addresses are exempt from release under FOIA Exemptions 4 and 6, and that it cannot be required under FOIA to create records—such as the requested screen printouts—that it does not already maintain. On cross motions for summary judgment, the district court found in favor of the OWC on all grounds. Plaintiffs now appeal.

## II. DISCUSSION

### A. FOIA Standard of Review

FOIA "requires federal agencies to make Government records available to the public, subject to nine exemptions for specific categories of material." Milner v. Dep't of Navy, 562 U.S. 562, 564 (2011). "FOIA is to be broadly construed in favor of disclosure, and its exemptions are to be narrowly construed." Audubon Soc'y v. U.S. Forest Serv., 104 F.3d 1201, 1203 (10th Cir. 1997). "The government bears the burden of demonstrating the requested records fall within one of FOIA's enumerated exemptions . . . ." Prison Legal News v. Executive Office for U.S. Attorneys, 628 F.3d 1243, 1247 (10th Cir. 2011). The agency redactions at issue in this appeal implicate two exemptions: Exemption 4, which applies to confidential commercial information, and Exemption 6, which applies to personnel, medical, and similar files whose disclosure would constitute a clearly unwarranted invasion of personal privacy. See 5 U.S.C. § 552(b)(4), (6).

"Whether a FOIA exemption justifies withholding a record is a question of law that we review de novo." Trentadue v. Integrity Comm., 501 F.3d 1215, 1226 (10th

Cir. 2007); 5 U.S.C. § 552. "Because this appeal arises from a grant of summary judgment in favor of the [the agency], we review the record and all reasonable inferences to be drawn therefrom in the light most favorable to [Plaintiffs]." Id. As always, summary judgment is only appropriate "if the [agency] shows that there is no genuine dispute as to any material fact and the [agency] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[3]

## B. Exemption 4 (Confidential Commercial Information)

Exemption 4 protects "trade secrets and commercial or financial information [that is] obtained from a person and [is] privileged or confidential." 5 U.S.C. § 552(b)(4). "If not a trade secret, for Exemption 4 to apply the information must be '(a) commercial or financial, (b) obtained from a person, and (c) privileged or confidential.'" Anderson v. U.S. Dep't of Health & Human Servs., 907 F.2d 936, 944 (10th Cir. 1990) (quoting Nat'l Parks and Conserv. Ass'n v. Morton, 498 F.2d 765, 770 (D.C. Cir. 1974)). The agency invokes this exemption on behalf of Elsevier, Inc. ("Elsevier"), the

---

[3] "The filing of cross-motions for summary judgment does not necessarily concede the absence of a material issue of fact. This must be so because by the filing of a motion a party concedes that no issue of fact exists under the theory he is advancing, but he does not thereby so concede that no issues remain in the event his adversary's theory is adopted." Nafco Oil & Gas, Inc. v. Appleman, 380 F.2d 323, 324-25 (10th Cir. 1967); see also Eagle v. Louisiana & S. Life Ins. Co., 464 F.2d 607, 608 (10th Cir. 1972) ("Presentation of cross-motions for summary judgment does not concede the absence of a material issue of fact."). Accordingly, "[c]ross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n, 483 F.3d 1025, 1030 (10th Cir. 2007) (quoting Buell Cabinet Co. v. Sudduth, 608 F.3d 431, 433 (10th Cir. 1979)). "Even where the parties file cross motions pursuant to Rule 56, summary judgment is inappropriate if disputes remain as to material facts." Id.

company that licenses to the agency the list of Board-certified physicians referenced by the agency's scheduling software. Plaintiffs challenge whether the referees' redacted names and business addresses are (1) commercial and (2) confidential.

## 1. Commercial

"FOIA does not define the term 'commercial,' so courts have given the term its ordinary meaning." New Hampshire Right to Life v. U.S. Dep't of Health & Human Servs., 778 F.3d 43, 49 (1st Cir. 2015); see also Watkins v. U.S. Bureau of Customs & Border Prot., 643 F.3d 1189, 1194 (9th Cir. 2011) (same). Consequently, "[t]he exemption reaches . . . broadly and applies (among other situations) when the provider of the information has a commercial interest in the information submitted to the agency." Baker & Hostetler LLP v. U.S. Dep't of Commerce, 473 F.3d 312, 319 (D.C. Cir. 2006); see also Am. Airlines, Inc. v. Nat'l Mediation Bd., 588 F.2d 863, 870 (2d Cir. 1978) ("'Commercial' surely means pertaining or relating to or dealing with commerce.").

Here, the information at issue—namely, the physicians' names and addresses—is provided to the agency by Elsevier as a component of a database that Elsevier licenses to the agency for an annual fee. Because the redacted information is part of the data that Elsevier compiles, maintains, and ultimately sells as a product, it is safe to say that Elsevier has a "commercial interest" in that information. See Baker & Hostetler, 473 F.3d at 319.

## 2. Confidential

7

"The first step in an Exemption Four [confidentiality] analysis is determining whether the information submitted to the government agency was given voluntarily or involuntarily." Utah v. U.S. Dep't of Interior, 256 F.3d 967, 969 (10th Cir. 2001) (citing Critical Mass Energy Project v. Nuclear Regulatory Comm'n, 975 F.2d 871, 878-79 (D.C. Cir. 1992)). In this case, the parties agree that the submission at hand was an involuntary one.[4] "Since the submission was involuntary, the information is protected from disclosure by FOIA if disclosure will either: '(1) . . . impair the government's ability to obtain necessary information in the future or (2) . . . cause substantial harm to the competitive position of the person from whom the information was obtained.'" Id. (quoting Nat'l Parks, 498 F.2d at 770) (emphasis added).

As to the first alternative prong, "when dealing with a FOIA request for information the provider is required to supply, the governmental impact inquiry will focus on the possible effect of disclosure on its quality." Critical Mass, 975 F.2d at 878 ("While . . . the governmental interest is unlikely to be implicated where the production of information is compelled, . . . there are circumstances in which disclosure could affect the reliability of such data."). Id. Neither party puts forth evidence or argument addressing whether disclosure will affect the quality or reliability of Elsevier's list of Board-certified doctors. Accordingly, this prong bears no weight in our analysis.

---

[4] Inasmuch as there is no indication that Elsevier was required to license its database to the agency, the argument could be made that the submission of the physician data was voluntary. But given that the parties agree that the submission was involuntary, we need not reach that issue.

As to the second alternative prong, "all that the parties need show . . . is actual competition and the likelihood of substantial competitive injury." Utah, 256 F.3d at 970 (quotation omitted). "Although conclusory and generalized allegations of substantial competitive harm are unacceptable and cannot support an agency's decision to withhold requested documents, actual economic harm need not be proved; evidence demonstrating the existence of potential economic harm is sufficient." Id. (quotation, alteration omitted).

The agency asserts that Elsevier would suffer competitive injury because the disclosure of some of the information contained in its database would devalue the database.[5] As the party with "the burden of persuasion at trial, [the agency] must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted." Anderson, 907 F.2d at 947 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 331 (1986)). Here, the agency's only evidence supporting its assertion is a letter that Elsevier sent the OWC two years after the Plaintiffs' FOIA requests, objecting to the disclosure of an unspecified type and quantity of information from its database. See App. 917-18 ("We must object to any disclosure of the physician data requested, under Exemption 4 of the FOIA. . . . The entire database of ABMS physicians is confidential, commercial information. Disclosure under FOIA would cause irreparable financial harm.").

---

[5] Elsevier, however, has neither intervened in this case nor voiced any objection to disclosure on the record.

9

Plaintiffs, however, object to that letter. We agree with Plaintiffs that the letter is hearsay: "It is an out-of-court written statement . . . now offered to prove the truth of the matter asserted"—viz., that Elsevier will suffer competitive injury from release of its database information. See Herrick v. Garvey, 298 F.3d 1184, 1191 (10th Cir. 2002); Fed. R. Evid. 801(c). Yet, the agency fails to identify any applicable hearsay exception. Consequently, the letter would be inadmissible at trial. See id.; Fed. R. Evid. 802.

"To determine whether genuine issues of material fact make a jury trial necessary, a court necessarily may consider only the evidence that would be available to the jury." Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1199 (10th Cir. 2006); see also Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1541 (10th Cir. 1995) ("It is well settled in this circuit that we can consider only admissible evidence in reviewing . . . summary judgment."). "This does not mean that [summary judgment] evidence must be submitted 'in a form that would be admissible at trial.'" Trevizo v. Adams, 455 F.3d 1155, 1160 (10th Cir. 2006) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). "Parties may, for example, submit affidavits . . ." despite the fact that affidavits are often inadmissible at trial as hearsay, on the theory that the evidence may ultimately be presented at trial in an admissible form. Argo, 452 F.3d at 1199. Nonetheless, "the content or substance of the evidence must be admissible." Id. (quoting Thomas v. IBM, 48 F.3d 478, 485 (10th Cir. 1995)). "The requirement is that the party submitting the evidence show that it will be possible to put the information, the substance or content of the evidence, into an admissible

10

form." 11 James Wm. Moore et al., Moore's Federal Practice–Civil § 56.91 (3d ed. 2015) (collecting cases); see also Fed. R. Civ. P. 56(c)(2) adv. comm. cmt. ("The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated."); Johnson v. Weld Cty., 594 F.3d 1202, 1210 (10th Cir. 2010) (declining to consider hearsay statements that proponent failed to show could be presented in admissible form).

Here, the agency neglects to show that it could  put the substance of the letter into an admissible form.  No representative of Elsevier has filed an affidavit in this case, and the agency's affidavit does not suggest that a representative of Elsevier would testify to the letter's competitive injury assertions at trial.  See Jones v. UPS Ground Freight, 683 F.3d 1283, 1293-94 (11th Cir. 2012) ("The most obvious way that hearsay testimony can be reduced to admissible form is to have the hearsay declarant testify directly to the matter at trial.").  In fact, although the agency now attempts to sidestep its previous admission, the agency conceded before the district court that the letter did not refer to Plaintiffs' FOIA requests, but rather was received in response to other FOIA requests, which sought access to Elsevier's entire database.[6]  Because the agency has not shown that the letter or its contents would be admissible at trial, we may not consider it on summary judgment.  See Johnson, 594 F.3d at 1210 (declining to consider hearsay statements where proponent failed to present affidavits showing that the statements could be replaced with live testimony by the declarants at trial); Herrick, 298 F.3d at

_____

[6] For that reason, even if we were to consider the letter, its probative value would be suspect.  However, given that we do not consider the letter, we need not resolve the controversy over the letter's relevance.

11

1192–93 (declining to consider inadmissible hearsay evidence when ruling on the government's FOIA summary judgment motion).

Absent that letter, the record is devoid of evidentiary support for the agency's assertion.  And, of course, as the moving party, the agency is not entitled to an inference that Elsevier would object to the release of the particular information at issue in this case.[7]  See Anderson, 907 F.2d at 947.

Furthermore, it remains an open question whether Elsevier even could successfully object to disclosure of the physicians' names and addresses.  When "materials . . . appear to be in the public domain, no meritorious claim of confidentiality can be made."  Id. at 952 (citing CNA Fin. Corp. v. Donovan, 830 F.2d 1132, 1154 (D.C. Cir. 1987) ("To the extent that any data requested under FOIA are in the public domain, the submitter is unable to make any claim to confidentiality—a sine qua non of Exemption 4.").  Elsevier licenses the physician list included in its database from the American Board of Medical Specialists ("ABMS").  Plaintiffs put forth evidence showing that the ABMS public website makes physicians' names and business addresses freely available and searchable by zip code and specialty online.[8] Although the agency disputes the breadth and accuracy of the list provided on the ABMS website, some of its arguments improperly rely on extra-record evidence, and

---

[7] We further note that the agency has pointed the court to no record evidence showing that Elsevier faces actual competition in providing the physician information to the agency.

[8] Although Plaintiffs also claim that ABMS will sell the list to the public for $895, they cite no record evidence supporting that claim.

12

the remainder of its evidence is insufficient to prevail on summary judgment.[9] See

W. Coast Life Ins. Co. v. Hoar, 558 F.3d 1151, 1157 (10th Cir. 2009) ("In reviewing

a grant of summary judgment, our inquiry is limited to the summary judgment record

before the district court when the motion was decided."); Anderson, 907 F.2d at 947.

Accordingly, we conclude that genuine disputes of material fact regarding the

public availability of the redacted data and potential commercial harm to Elsevier

remain outstanding. See Savant Homes, Inc. v. Collins, 809 F.3d 1133, 1137 (10th Cir.

2016) ("An issue is genuine if there is sufficient evidence on each side so that a rational

trier of fact could resolve the issue either way. An issue of fact is material if under the

substantive law it is essential to the proper disposition of the claim." (quotations and

citations omitted)). Therefore, summary judgment in the agency's favor on

Exemption 4 was improper. Cf. Anderson 907 F.2d at 946 (assessing whether

questions of fact regarding confidentiality precluded summary judgment on

Exemption 4).

**C. Exemption 6 (Personal Privacy)**

Exemption 6 protects "personnel and medical files and similar files the

disclosure of which would constitute a clearly unwarranted invasion of personal

privacy." 5 U.S.C. § 552(b)(6). "In determining whether the release of such

information would 'constitute a clearly unwarranted invasion of personal privacy,'

---

[9] Contrary to the agency's assertion, it is irrelevant that the ABMS website does not contain information regarding which physicians serve as referees for the OWC. Elsevier's database does not contain that information either. Exemption 4 only applies to the specific information that Elsevier submitted to the agency.

13

we must balance 'the public interest in disclosure against the privacy interest Congress intended the exemption to protect.'" Trentadue, 501 F.3d at 1233 (quoting Forest Guardians v. U.S. Fed. Emergency Mgmt. Agency, 410 F.3d 1214, 1218 (10th Cir. 2005)). "If there is an important public interest in the disclosure of information and the invasion of privacy is not substantial, the private interest in protecting the disclosure must yield to the superior public interest." Forest Guardians, 410 F.3d at 1218 (quotation omitted). "If, however, the public interest in the information is virtually nonexistent or negligible, then even a very slight privacy interest would suffice to outweigh the relevant public interest." Id. (quotation omitted). "The primary purpose of this exemption is to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." Prison Legal News v. Samuels, 787 F.3d 1142, 1147 (D.C. Cir. 2015) (quotations omitted).

The agency invokes this exemption on behalf of the referee physicians mentioned in the reports.[10] Plaintiffs dispute (1) whether the reports satisfy Exemption 6's "similar files" requirement, and (2) the weight of the referees' privacy interest in the information contained in the reports.

### 1. Similar files

"'Similar files' refers broadly to 'detailed Government records on an individual which can be identified as applying to that individual.'" Trentadue, 501 F.3d at 1232-33 (quoting U.S. Dep't of State v. Wash. Post Co., 456 U.S. 595, 602

---

[10] On appeal, the agency does not invoke the privacy interests of the injured workers listed in the reports, presumably because Plaintiffs do not challenge the redactions of those workers' identifying information.

14

(1982)); see also Forest Guardians, 410 F.3d at 1217 ("'Similar files' under

Exemption 6 has a 'broad, rather than a narrow, meaning' and encompasses all

information that 'applies to a particular individual.'") (quoting Wash. Post Co., 456

U.S. at 600, 602).  Because the redacted reports contain individual physicians'

contact information, as well as details of those physicians' employment history with

the federal government, they probably constitute "similar files" under Exemption 6.

See Trentadue, 501 F.3d at 1233.

### 2. Privacy interest

In general, "[t]he type of privacy interests Congress intended to protect under

Exemption 6 'encompass the individual's control of information concerning his or her

person.'"  Forest Guardians, 410 F.3d at 1218 (quoting U.S. Dep't of Def. v. FLRA, 510

U.S. 487, 500 (1994) (internal alteration omitted)).  However, "[t]he scope of a privacy

interest under Exemption 6 will always be dependent on the context in which it has

been asserted."  Prison Legal News, 787 F.3d at 1147 (quoting Armstrong v. Exec.

Office of the President, 97 F.3d 575, 581 (D.C. Cir. 1996)); see also Long v. Office

of Pers. Mgmt., 692 F.3d 185, 191-92 (2d Cir. 2012) ("The analysis is context

specific.").

In seeking to establish the physicians' privacy interests, the agency relies on a set

of cases holding that certain lists of names and addresses can implicate a privacy interest,

even though that information may already be available to the public in some form.  See,

e.g., FLRA, 510 U.S. at 500 (finding that nonunion agency employees' privacy interest in

preventing disclosure of their home addresses to union representatives was "not

15

insubstantial"); Forest Guardians, 410 F.3d at 1219 (finding that property owners had "some privacy interest" in floodplain maps that could reveal their names, home addresses, and participation in a federal insurance program); Sheet Metal Workers Int'l Ass'n, Local No. 9 v. U.S. Air Force, 63 F.3d 994, 998 (10th Cir. 1995) (finding that federal contractor employees had a substantial privacy interest in preventing release of their payroll records).

Although "the federal courts have held that . . . names and addresses qualify as potentially protectable 'similar files' under Exemption 6, the release of a list of names and other identifying information does not inherently and always constitute a 'clearly unwarranted' invasion of personal privacy." News-Press v. U.S. Dep't of Homeland Sec., 489 F.3d 1173, 1199 (11th Cir. 2007) (quoting 5 U.S.C. § 552(b)(6)); see U.S. Dep't of State v. Ray, 502 U.S. 164, 176 n.12 (1991) ("We emphasize . . . that we are not implying that disclosure of a list of names and other identifying information is inherently and always a significant threat to the privacy of the individuals on the list."). "Instead, 'whether disclosure of a list of names is a significant or a de minimis threat depends upon the characteristic(s) revealed by virtue of being on the particular list, and the consequences likely to ensue.'" News-Press, 489 F.3d at 1199 (quoting Ray, 502 U.S. at 176 n.12).[11]

---

[11] See also Long, 692 F.3d at 191 ("Names and other identifying information do not always present a significant threat to an individual's privacy interest.") (quotation omitted); Judicial Watch, Inc. v. Food & Drug Admin., 449 F.3d 141, 153 (D.C. Cir. 2006) ("The statute does not categorically exempt individuals' identities, . . . because the 'privacy interest at stake may vary depending on the context in which it is asserted.'") (quoting Armstrong, 97 F.3d at 582).

The agency, however, fails to address meaningful differences between the characteristics and consequences at issue in its cited cases, and those at issue here. For the following reasons, we conclude that the context-specific nature of the Exemption 6 inquiry precludes the agency's cases from gaining much traction in this appeal.

First, the agency's cited cases concerned <u>home</u> addresses. As the Supreme Court recognized in <u>FLRA</u>, "the privacy of the home . . . is accorded special consideration in our Constitution, laws, and traditions." 510 U.S. at 501; <u>see also</u> <u>Forest Guardians</u>, 410 F.3d at 1221 (finding a privacy interest because "'many people simply do not want to be disturbed at home,' and 'we are reluctant to disparage the privacy of the home'") (quoting <u>id.</u>) (alterations omitted). That "special consideration," however, is not implicated here: This case concerns <u>business</u> addresses. It is not intuitive to us that the referee physicians possess a cognizable privacy interest in their business addresses—after all, it is in their economic interests to make their office locations generally available to the public, so that patients can visit for evaluation and treatment. But the agency has not provided any testimony from physicians—or any other evidence—to support its assertion that treating physicians have a privacy interest in their business addresses. Of course, the agency is not entitled to such an inference in its favor.

Second, certain of those cases arose in the labor relations context. Accordingly, the courts were sensitive to the dangers—including exposure to harassment, pressure, or threats—inherent in revealing workers' identities and

17

addresses to potential adversaries.  See, e.g., FLRA, 510 U.S. at 501 ("Whatever the reason that these employees have chosen not to become members of the union or to provide the union with their addresses, . . . it is clear that they have some nontrivial privacy interest in nondisclosure, and in avoiding the influx of union-related mail, and, perhaps, union-related telephone calls or visits, that would follow disclosure.") (emphasis omitted); Sheet Metal Workers, 63 F.3d at 997-98 (expressing concern over "the wide range of use to which [the requested] information—a list of people engaged in the construction trade, broken into their particular occupational classification—could be put") (citation and quotation omitted).  In that context, the consequences of disclosure are more apparent and may be substantial.  Not so here.  The agency identifies no risk of harassment, embarrassment, or other consequence that could ensue from disclosure of the referee physicians' identities and business addresses.[12]  Nor does it put forth any evidence that could support such a finding.

Third, the remainder of the cases concerned disclosure of personal financial information in addition to names and addresses.  See Forest Guardians, 410 F.3d at 1218 ("The privacy interest in an individual's home address becomes even more substantial when that information 'would be coupled with personal financial information.'") (quoting Sheet Metal Workers, 63 F.3d at 997 (concerning payroll

---

[12] See, e.g., Judicial Watch, 449 F.3d at 153 (finding a substantial privacy interest in light of evidence that researchers developing an abortion drug could be targeted for "abortion-related violence"); Ray, 502 U.S. at 177 n.12 (finding a significant privacy interest where unsuccessful undocumented immigrants could be "subject to possible embarrassment and retaliatory action" in their native countries).

18

records)).  For the first time on appeal, the agency contends that the requested reports implicate the physicians' personal financial information.

Although we have discretion to affirm on any ground adequately supported by the record, the exercise of that discretion is guided by three considerations: (1) was the alternate ground "fully briefed and argued here and below"; (2) did the parties have "a fair opportunity to develop the factual record"; and (3) "whether, in light of factual findings to which we defer or uncontested facts, our decision would involve only questions of law."  Elkins v. Comfort, 392 F.3d 1159, 1162 (10th Cir. 2004).  Because the agency did not raise this argument before the district court, the first factor weighs against reaching it on appeal.

As to the second and third factors, it is beyond dispute that the four specific types of agency reports at issue in this appeal do not contain any financial information regarding either the cost of or payment for referee evaluations.[13]  At most, the reports disclose the total number of referee evaluations performed by each physician over certain timeframes.  The agency contends the number of evaluations could be <u>combined</u> with information regarding physician payments in order to determine the income each physician has derived from performing referee evaluations.  <u>Cf.</u> <u>Consumers' Checkbook Ctr. for the Study of Servs. v. U.S. Dep't of Health & Human Servs.</u>, 554 F.3d 1046, 1048-51 (D.C. Cir. 2009) (finding that physicians had a substantial privacy interest in their Medicare claims because the

---

[13] In fact, the agency denied Plaintiffs' FOIA requests for information regarding referee payments, and Plaintiffs do not challenge that denial.

19

claims could be combined with publically available Medicare procedure reimbursement rates to calculate the physicians' fees). The agency, however, puts forth no evidence showing that referee exam reimbursement rates or payments are publically available.[14] Because the agency's financial information argument turns in substantial part on a question of fact—namely, the public availability of referee payments—for which there is scant relevant evidence in the record, the second and third factors also weigh against reaching that argument for the first time on appeal. Therefore, we do not consider the agency's contention that the requested reports implicate the physicians' personal financial information.

In sum, we conclude that, on this record, and given the meaningful differences between the context of this appeal and our previous Exemption 6 cases, genuine disputes of material fact regarding the scope of that referees' privacy interest in their business addresses and referee history remain outstanding. Yet, without knowing the full scope of the privacy interest implicated, a court cannot properly perform the balancing

---

[14] The only record evidence arguably supporting the agency's contention that outside sources could be used to calculate the physicians' incomes consists of what appears to be two online billing statements submitted by Plaintiffs. The Court's best guess is that the documents are billing records for the referee evaluations of two of the plaintiffs (although all patient-identifying information has been redacted). The agency, however, has not pointed the Court to any record evidence explaining the documents, let alone evidence indicating whether those records are public or whether Plaintiffs could obtain similar records for other physicians. Such inconclusive evidence cannot carry the agency's summary judgment burden. See Cordova v. Aragon, 569 F.3d, 1183, 1191 (10th Cir. 2009) ("It is not our role to sift through the record to find evidence not cited by the parties to support arguments they have not made.").

test required by Exemption 6.[15]  Consequently, summary judgment in the agency's

favor on Exemption 6 was improper.

**D.  Screenshots**

FOIA's duty of disclosure applies to electronic records and documents.  See 5

U.S.C. § 552(f)(2) (defining "record" to "include[] any information that would be an

agency record . . .  when maintained by an agency in any format, including an

electronic format"); id. § 552(a)(3)(C) ("In responding . . . to a request for records, an

agency shall make reasonable efforts to search for the records in electronic form or

format . . . .").  But FOIA "does not obligate agencies to create or retain documents; it

only obligates them to provide access to those which it in fact has created and retained."

Kissinger v. Reporters Comm. for Freedom of the Press, 445 U.S. 136, 152 (1980);

Forsham v. Harris, 445 U.S. 169, 186 (1980) ("FOIA imposes no duty on the agency to

create records." (citing NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 161-62 (1975)

(holding that FOIA does not compel agencies to write or create material to explain

disclosed documents))).  Relying on that well-established principle, the district court

held that FOIA did not compel Defendants to create and produce printouts of the menu

screens displayed by its scheduling program.

---

[15] "[T]he only relevant 'public interest in disclosure' to be weighed in [Exemption 6's] balance is the extent to which disclosure would serve the 'core purpose of the FOIA,' which is 'contributing significantly to public understanding of the operations or activities of the government.'"  FLRA., 510 U.S. at 495 (quoting U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press, 489 U.S. 749, 775 (1989)).  Because we find that the physicians' privacy interest raises genuine questions of material fact that defeat summary judgment, we need not assess the weight of Plaintiffs' asserted public interest.

Defendants claim on appeal that these screenshots are "existing electronic records," (Aplt. Br. 55), but the district court accepted the agency's contrary position that the screenshots "do not exist" because "screen shots are not created or maintained as part of the scheduling process." Our review of the record leads us to conclude that the undisputed evidence is that such screenshots do not exist. (Aplt. App. 897, Decl. of Julia Trist, ¶28(i)). There is no contrary evidence that these images were electronically stored in such a way that would enable their recovery. Therefore, for the government to produce the requested printouts, it would have to open the software, input the relevant data, and recreate a screen image that could be captured and produced. Because FOIA does not require an agency to create records, the agency need not undertake that process. Accordingly, summary judgment on the request for screen printouts was proper, so we affirm on that issue.

## III.   CONCLUSION

For the foregoing reasons, we REVERSE in part, and AFFIRM in part, the district court's grant of summary judgment and REMAND this case for proceedings consistent with this opinion.

22