**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 27, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

TERRY SCHULENBERG,

     Plaintiff - Appellant,

v.

BNSF RAILWAY COMPANY,

    Defendant - Appellee.

No. 18-6003

_____

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 5:16-CV-00623-HE)**
_____

Patrick S. O'Brien, Law Office of Patrick S. O'Brien, St. Louis, Missouri, for Plaintiff - Appellant.

Robert D. Hart (Christopher D. Wolek and Michael Womack with him on the brief), Mullican & Hart, P.C., Tulsa, Oklahoma, for Defendant - Appellee.
_____

Before **MATHESON**, **PHILLIPS**, and **McHUGH**, Circuit Judges.
_____

**McHUGH**, Circuit Judge.
_____

     Terry Schulenberg, a train engineer for BNSF Railway Company, was injured when the train he was riding "bottomed out." Mr. Schulenberg filed suit against BNSF, alleging liability for negligence under the Federal Employers' Liability Act

(FELA), 45 U.S.C. §§ 51–60. BNSF filed motions to exclude Mr. Schulenberg's expert witness and for summary judgment, both of which the district court granted. Mr. Schulenberg appeals those decisions. We conclude the district court did not abuse its discretion in excluding the expert witness because there was no discernable methodology offered for his opinions. And we conclude the district court was correct in granting summary judgment to BNSF because Mr. Schulenberg failed to present a dispute of material fact on his sole theory of liability on appeal—negligence *per se*. Therefore, we affirm the district court.

## I.     BACKGROUND

On January 11, 2014, Mr. Schulenberg, along with Dewey Sutterfield, the conductor, was riding a train from Oklahoma City to Tulsa as part of his job as a locomotive engineer for BNSF. At a crossing between mileposts 485.8 and 485.5, the train hit rough track, causing the engine to "bounce[] and bottom[] out" and "hammer[]." Appellant's App. vol. I, at 172. The incident was so severe, Mr. Schulenberg testified it caused Mr. Sutterfield's water bottle to fly to the floor and almost caused Mr. Sutterfield to bounce out of his chair. Mr. Schulenberg grabbed onto the desk in front of him and braced himself with his legs and then felt a pain go down the back of his left leg and a cold sensation in his left thigh. Mr. Schulenberg continues to suffer from those feelings in his leg to this day.

At his deposition, Mr. Sutterfield testified that the incident was the worst bottoming out he had experienced in his forty-seven years riding trains for the

2

railroad. Mr. Sutterfield's statement after the incident reported the bouncing was so severe that he was bounced out of his seat.

At the time of the incident, the relevant track segment was classified as a Class 5 track under the Federal Railroad Administration (FRA) standards, permitting a maximum speed of eighty miles per hour. 49 C.F.R. § 213.9. However, BNSF had set a general internal timetable speed limit of fifty-five miles per hour for that segment. Additionally, on the day of the incident, there was a slow order in effect for that segment of track due to a report of "rough surface," lowering the speed limit to forty miles per hour. The train was traveling at thirty-eight miles per hour when the bottoming out occurred.

When the train arrived in Tulsa, Mr. Schulenberg completed a personal injury report for the incident. In response to the report, BNSF lowered the speed limit for that segment to twenty-five miles per hour and sent Lawrence Wallace to inspect the track. Mr. Wallace measured a deviation in the rail and found a deviation of 1 5/8 inches in a 62-foot chord.[1] After Mr. Wallace's inspection, BNSF raised the speed limit back to forty miles per hour.

Mr. Schulenberg filed three claims against BNSF: two claims alleging liability under FELA and a third claim alleging liability under the Locomotive Inspection Act. Mr. Schulenberg ultimately abandoned one of his FELA claims and his Locomotive

---

[1] Mr. Schulenberg disputed this fact in the district court. However, on appeal, Mr. Schulenberg disputes only whether this measurement is accurate and takes the additional rail movement under load into consideration; he does not dispute that Mr. Wallace's actual static measurement was 1 5/8 inches.

Inspection Act claim[2], leaving only his "single-event FELA negligence claim." Appellant's App. vol. III, at 168.

BNSF filed a motion to exclude the testimony of Mr. Schulenberg's expert witness, Alan Blackwell, and a motion for summary judgment on the remaining FELA claim. The district court granted the motion to exclude Mr. Blackwell's expert opinions, concluding the opinions lacked a reliable basis. Then, the district court granted summary judgment to BNSF, concluding that Mr. Schulenberg "ha[d] not submitted evidence sufficient to support an inference of negligence in the maintenance or inspection of the section of track at issue." *Id.* vol. III, at 168–72. Mr. Schulenberg appealed. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we conclude the district court did not abuse its discretion in excluding Mr. Blackwell's testimony or err in granting BNSF's motion for summary judgment. We therefore affirm.

## II.    DISCUSSION

On appeal, Mr. Schulenberg pursues only a theory of liability based on negligence *per se* for violation of FRA regulation 49 C.F.R. § 213.63. To put the exclusion of the expert witness and summary judgment issues in context, we begin with a brief discussion of liability under FELA and the relevant FRA regulations.

---

[2] Mr. Schulenberg labeled his cause of action as a Locomotive Inspection Act claim. However, as we have recently made clear, there is no independent private cause of action under the Locomotive Inspection Act. *Straub v. BNSF Ry. Co.*, ___F.3d ___, 2018 WL 6273359, at *4 n.6 (10th Cir. Dec. 3, 2018). Instead, plaintiffs can bring FELA negligence per se claims based on violations of the Locomotive Inspection Act. *Id.*

4

Next, we discuss whether the district court abused its discretion in excluding Mr. Blackwell's expert testimony. Finally, we review the district court's decision to grant summary judgment.

## A.  *Liability under FELA*

Mr. Schulenberg's FELA claim alleges that BNSF is liable for his injuries under 45 U.S.C. § 51. That section provides,

> Every common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its . . . track [or] roadbed . . . .

45 U.S.C. § 51. An employee can recover under FELA for the railroad's violation of a safety statute or regulation under the theory of negligence *per se*. *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 703 n.12 (2011); *Straub v. BNSF Ry. Co.*, ___F.3d___, 2018 WL 6273359, at *4 n.6 (10th Cir. 2018).

The FRA safety requirements are set out by "class" of track. The maximum allowable operating speed is eighty miles per hour for a Class 5 track, sixty miles per hour for a Class 4 track, and forty miles per hour for a Class 3 track. 49 C.F.R. § 213.9(a). If a segment of a track does not meet the necessary requirements for its intended class, it is reclassified as the class for which it does meet all the requirements. *Id.* § 213.9(b).

One of the safety requirements is the maximum deviation from uniform profile of the rail at the mid-ordinate of a 62-foot chord. *Id.* § 213.63. The maximum

5

allowable deviation is 1 1/4 inches for a Class 5 track, 2 inches for a Class 4 track, and 2 1/4 inches for a Class 3 track. *Id.* Importantly, when unloaded track is measured to determine compliance with these requirements, "the amount of rail movement, if any, that occurs while the track is loaded must be added to the measurements of the unloaded track." *Id.* § 213.13.

Mr. Schulenberg alleges negligence *per se* based on a violation of § 213.63. Specifically, he argues Mr. Wallace's measurement of a 1 5/8 inch deviation in a 62-foot chord did not account for deflection under load, as required by § 213.13. And he contends the additional deflection under load, when added to the 1 5/8 inch static measurement, would exceed the 2 1/4 inch deviation permitted by § 213.63.

## B. *Exclusion of Expert Witness*

Mr. Schulenberg submitted an expert report in support of his claim that BNSF violated § 213.63. The district court ultimately excluded the report and the expert's testimony. Mr. Schulenberg challenges that decision on appeal.

### 1. Standard of Review

Federal Rule of Evidence 702 "imposes on a district court a gatekeeper obligation to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (quoting *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 589 (1993)). The district court has discretion in how it conducts its *Daubert* analysis, but enjoys no discretion in whether it performs such an analysis. "Accordingly, we review de novo the issue of whether the district court actually performed its gatekeeper role in the

first instance." *Adamscheck v. Am. Family Mut. Ins. Co.*, 818 F.3d 576, 586 (10th Cir. 2016) (internal quotation marks omitted)). But, where "the district court fulfilled its gatekeeping responsibility, [w]e then review the trial court's actual application of the standard in deciding whether to admit or exclude an expert's testimony for abuse of discretion." *Id.* (alteration in original) (internal quotation marks omitted); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).

Here, there is no dispute regarding the district court's performance of its gatekeeping function. Accordingly, "[t]he district court has 'wide latitude' in deciding whether to exclude expert testimony . . . ." *Hall v. Conoco Inc.*, 886 F.3d 1308, 1311 (10th Cir. 2018) (internal quotation marks omitted). In this regard, the district court abuses its discretion only if the decision "is arbitrary, capricious, whimsical or manifestly unreasonable, or when we are convinced that the district court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *United States v. Chapman*, 839 F.3d 1232, 1237 (10th Cir. 2016) (quotation marks omitted).

## 2. Rule 702 Standard

Federal Rule of Evidence 702 controls the admission of expert witness testimony. Rule 702 provides,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In evaluating the admissibility of expert testimony, "the district court must satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony." *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc) (quotation marks omitted). This requires a two-step process. First, the district court must "determine whether the expert is qualified 'by knowledge, skill, experience, training, or education' to render an opinion." *Id.* (quoting Fed. R. Evid. 702). Second, if the expert is sufficiently qualified, the district court "must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology." *Id.* Importantly, the court is not required "to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."[3] *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

---

[3] "Ipse dixit" is roughly translated as "he himself said it" and refers to a dogmatic and unproven statement. *Ipse Dixit*, BLACK'S LAW DICTIONARY (10th ed. 2014).

### 3. Application to Mr. Blackwell's Testimony

BNSF "did not challenge Mr. Blackwell's qualifications in the areas of railroad track maintenance and inspections." BNSF's Br. at 17. Instead, the district court ultimately excluded Mr. Blackwell's testimony as not sufficiently reliable. Therefore, the only question on appeal is whether the district court abused its discretion in determining Mr. Blackwell's opinions were not based on reliable reasoning and methodology.

In answering that question, we begin by describing the district court's decision and rationale. Then, we explain why the district court did not abuse its discretion in excluding Mr. Blackwell's expert testimony.

a. *District court's opinion*

Mr. Blackwell filed a "lengthy" expert report "composed almost entirely of excerpts from federal railroad safety standards and various manuals." Appellant's App. vol. III, at 164. The district court found, "[t]he report made little or no effort to relate the various standards to Mr. Blackwell's conclusions." *Id.* Ultimately, the district court found Mr. Blackwell's report could be condensed to four specific opinions.

The district court concluded Mr. Blackwell should not be allowed to offer these four opinions because they "simply ignore[d] inconvenient facts," were based on evidence "so removed in time from the incident as to be essentially meaningless," and "lack[ed] the detail necessary to support [Mr. Blackwell's] conclusions." *Id.* vol. III, at 166. Additionally, the district court noted that "[Mr. Schulenberg's] response

9

to [BNSF's] motion makes virtually no effort to identify or defend Mr. Blackwell's methodology at all. Rather, [Mr. Schulenberg] relies only on Mr. Blackwell's experience in the area and his interpretation of deposition testimony from [Mr. Wallace that was] . . . taken after [Mr.] Blackwell's expert report was prepared."

*Id.*

As part of Mr. Schulenberg's response to BNSF's motion to exclude Mr. Blackwell, Mr. Schulenberg attached an "addendum" to Mr. Blackwell's expert report based on the recent deposition of Mr. Wallace. Mr. Blackwell's addendum offered several additional opinions regarding BNSF's alleged failure to properly inspect and maintain the track. Most relevantly, Mr. Blackwell's addendum stated,

> Based on my specialized knowledge and experience that track deflection measurements under the running rails can substantially increase the collective deviation measurement under load, and based on BNSF Railway's knowledge that a locomotive bouncing up and down and bottoming out is an indication that there is a track surface crosslevel or profile dip defect, it is my opinion that the track surface was not in compliance with BNSF and Code of Federal Regulations Part 213.63 Track Safety Standard requirements at the time of the incident.

*Id.* vol. II, at 189.

The district court rejected the addendum because the opinions were "based on a forced and inaccurate characterization of what Mr. Wallace said" and the opinions were not "sufficiently reliable to be admissible when tested against" the evidentiary standards. *Id.* vol. III, at 166–67.

The district court ultimately summarized its reason for rejecting the totality of Mr. Blackwell's expert testimony:

10

It is not enough to have a knowledgeable expert leap to the conclusions a party would like the jury to be exposed to. Rather, there must be a reliable and identifiable basis for the expert's opinions, grounded in the evidence and in the practices and standards of the particular discipline involved. That basis is lacking as to the proffered opinions of Mr. Blackwell.

*Id.* at 167.

b. *Abuse of discretion*

For purposes of appeal, Mr. Schulenberg abandons any argument that the district court improperly excluded Mr. Blackwell's specific opinions in all but one instance. But he argues the district court abused its discretion by excluding Mr. Blackwell's testimony in its entirety because Mr. Blackwell could have offered expert testimony about general safety standards. We therefore separately address whether the district court abused its discretion in excluding Mr. Blackwell's specific opinion and whether it abused its discretion in excluding his testimony in its entirety.

i. Mr. Blackwell's specific opinion

On appeal, the only specific opinion Mr. Schulenberg attempts to defend is Mr. Blackwell's conclusion that the deviation in the rail exceeded that which is permitted by 49 C.F.R. § 213.63. We conclude the trial court did not abuse its discretion in excluding this testimony. In his brief to this court, Mr. Schulenberg perpetuates the error he made in the district court: he "makes virtually no effort to identify or defend Mr. Blackwell's methodology at all." Appellant's App. vol. III, at 166. Instead, Mr. Schulenberg simply argues Mr. Blackwell should be able to "refer to FRSA regulations [in addition to] his industry experience, so long as his opinions

11

do not extend to whether [BNSF's] conduct actually violated the regulations," just as he was allowed to do in *Cowden v. BNSF Railway Co.* (*Cowden I*), No. 4:08-CV-01534-ERW, 2013 WL 5442926 (E.D. Mo. Sept. 30, 2013). Schulenberg's Br. at 43 (quoting *Cowden I*, 2013 WL 5442926, at \*7). The problem with this argument is that before making this ruling, the district court in *Cowden I* had already determined Mr. Blackwell's opinions had a reliable factual foundation and used an acceptable methodology. *Cowden I*, 2013 WL 5442926, at \*3–6. Here, Mr. Schulenberg has failed to identify any factual foundation or methodology behind Mr. Blackwell's opinions.

Mr. Schulenberg does not attempt to identify a methodology that supports any of Mr. Blackwell's opinions or to defend that methodology against an abuse of discretion standard. Accordingly, Mr. Schulenberg has offered nothing from which we could conclude the district court abused its discretion in excluding Mr. Blackwell's specific expert opinion.

### ii. General safety and regulation testimony

The second issue is whether the district court abused its discretion in excluding Mr. Blackwell's testimony in its entirety because Mr. Blackwell could have provided general expert testimony that would "assist the jury in understanding track defects, the federal regulations[,] and BNSF standards with respect to defects and inspections, and the manner in which track is inspected." Schulenberg's Br. at 41. Specifically, Mr. Schulenberg argues that Mr. Blackwell should have been allowed to testify about

12

"the method of performing a proper inspection for deviations from uniform profile." *Id.* at 42.

As an initial matter, Mr. Schulenberg never argued to the district court that Mr. Blackwell should be permitted to provide general expert testimony on the applicable standards even if Mr. Blackwell's specific opinions were excluded. It is difficult to see how the district court's decision "is arbitrary, capricious, whimsical or manifestly unreasonable," or how we could be "convinced that the district court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances," *Chapman*, 839 F.3d at 1237 (quotation marks omitted), by failing to consider an argument with which the district court was never presented. Moreover, Mr. Schulenberg has not argued for plain error on appeal. Consequently, his claim fails for lack of preservation. *See United States v. Roach*, 896 F.3d 1185, 1192 (10th Cir. 2018) (noting that an appellant who fails to preserve an evidentiary objection must argue plain error on appeal or the argument is waived), *petition for cert. filed*, No. 18-6804 (Nov. 26, 2018).

And, even if the district court had abused its discretion in excluding Mr. Blackwell's general expert testimony, that error would be harmless. *Cf. Ho v. Michelin N. Am., Inc.*, 520 F. App'x 658, 666 (10th Cir. 2013) (applying a harmless error analysis to the exclusion of expert testimony). Mr. Schulenberg contends the proposed general expert testimony would "assist the jury in considering the adequacy of . . . the inspection performed by Mr. Wallace immediately after [Mr. Schulenberg's] injury." Schulenberg's Br. at 42. He further asserts this expert

13

testimony could help the jury conclude that Mr. Wallace failed to properly account for additional rail movement under load and that the 1 5/8 inch measurement therefore does not reflect the actual deviation of the rail in the 62-foot chord. For the reasons discussed in detail below, however, an inference that the 1 5/8 inch measurement does not account for additional deflection under load is not sufficient for Mr. Schulenberg's negligence *per se* claim to survive summary judgment. Therefore, any error in not admitting Mr. Blackwell's general standard testimony is harmless, even if Mr. Schulenberg had sought to admit it.

### C. *Summary Judgment*

### 1. Standard of Review

We "review[] a district court's grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the non-moving party." *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* 56(c)(1).

Where the nonmovant bears the burden of proof on an issue at trial, the movant has an "'initial responsibility of informing the district court of the basis for

14

its motion,' the absence of evidence establishing a fact on which the nonmovant had the burden of persuasion." *Felkins v. City of Lakewood*, 774 F.3d 647, 653 (10th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Importantly, "[a] movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim. Such a movant may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* (quotation marks omitted). In response, the nonmovant bears the "burden to set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for [him]." *Id.* (internal quotation marks omitted).

## 2. Standard of Proof for FELA Claims

"The standard applied by federal courts in determining whether there is sufficient evidence to send a FELA case to the jury is significantly broader than the standard applied in common law negligence actions." *Metcalfe v. Atchison, T. & S. F. Ry. Co.*, 491 F.2d 892, 895 (10th Cir. 1974). A FELA case can be taken from the jury "[o]nly when there is a complete absence of probative facts to support" the employee's claim. *Id.* (quoting *Lavender v. Kurn*, 327 U.S. 645, 653 (1946)). However, this standard must be considered against "[t]he essential requirement . . . that mere speculation be not allowed to do duty for probative facts after making due allowance for all reasonably possible inferences favoring the party whose case is attacked." *Id.* (quoting *Tennant v. Peoria & P.U. Ry. Co.*, 321 U.S. 29, 32–33

15

(1944)).[4] Additionally, "in comparison to tort litigation at common law, 'a relaxed standard of causation applies under FELA.'" *CSX Transp.*, 564 U.S. at 692 (quoting *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 542–43 (1994)). "Under [FELA] the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." *Id.* (alteration in original) (quoting *Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 506 (1957)).

## 3. Appropriateness of Summary Judgment

On appeal, Mr. Schulenberg's sole "theory of liability . . . is that BNSF's track violated the standards for maximum deviation from uniform profile provided for in 49 C.F.R. § 213.63." Schulenberg's Reply Br. at 1. It is undisputed that there was an internal slow order for the relevant segment of track at the time of Mr. Schulenberg's accident, reducing the speed limit to forty miles per hour. Based on the internal slow

---

[4] Mr. Schulenberg cites *Metcalf v. Atchison, T. & S. F. Ry. Co.*, 491 F.2d 892 (10th Cir. 1974), and a series of cases from other circuits that establish the lower standard for FELA cases. BNSF argues Mr. Schulenberg waived these standards by failing to raise the specific language (and the cases) in the district court. But Mr. Schulenberg's brief to the district court stated that "a party moving for the equivalent of summary judgment in a FELA case should not prevail if there is even a minimum amount of evidence in the non-moving party's favor" and he cited cases in support of that standard. Appellant's App. vol. II, at 161. While we will not consider issues raised for the first time on appeal—whether "a bald-faced new issue or a new theory . . . that falls under the same general category as an argument presented at trial," *McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 999 (10th Cir. 2002) (internal quotation marks omitted)—Mr. Schulenberg is "simply offer[ing] new legal authority for the position that he . . . advanced before the district court," *United States v. Rapone*, 131 F.3d 188, 196 (D.C. Cir. 1997).

16

order, BNSF would be required to comply with Class 3 track regulations. 49 C.F.R. § 213.9.

The district court granted summary judgment on Mr. Schulenberg's claim because BNSF's "inspection and industry maintenance records support [its] contention that the track in question complied with all necessary regulations." Appellant's App. vol. III, at 170. The district court rejected Mr. Schulenberg's argument that "the deposition testimony of the track inspector [Mr. Wallace] somehow shows that federal inspection standards were not followed." *Id.* And the district court found Mr. Schulenberg "offered no other evidence which would support an inference that the deflection/dip in the track was different from that reported by the inspector." *Id.* at 171. As a result, the district court concluded Mr. Schulenberg failed to "submit[] evidence sufficient to support an inference of negligence in the maintenance or inspections of the section of track at issue here." *Id.* at 172. Mr. Schulenberg challenges this conclusion on appeal.

We begin our analysis of whether the district court erred in granting summary judgment by reviewing the facts in the light most favorable to Mr. Schulenberg, including Mr. Schulenberg's challenges to the district court's statement of undisputed facts. Then we explain why those facts are insufficient to raise a dispute of material fact of negligence *per se*.

a. *Facts in the light most favorable to Mr. Schulenberg*

On January 9, 2014, BNSF lowered the speed limit for the relevant segment of track to forty miles per hour because of "rough surface." Appellant's App. vol. II, at

17

180. This reduced speed limit was still in effect two days later when Mr. Schulenberg and Mr. Sutterfield rode over that segment of track on their way from Oklahoma City to Tulsa. Although they were traveling thirty-eight miles per hour—under the reduced speed limit—when the train hit rough track, the engine still "bounced and bottomed out" and "hammered."

Mr. Schulenberg testified that the bottoming out was so severe the engine bounced hard enough to knock Mr. Sutterfield's water bottle on the floor and almost caused Mr. Sutterfield to bounce out of his chair.[5] Additionally, Mr. Sutterfield testified it was the worst bottoming out he has experienced in his forty-seven years working for the railroad.

After Mr. Schulenberg reported the incident, BNSF sent Mr. Wallace to inspect the track. Mr. Wallace measured a deflection and found a deviation in the rail of 1 5/8 inches in a 62-foot chord.

Mr. Schulenberg argues that he raised a dispute of material fact regarding whether Mr. Wallace's measurement took into account the additional deflection under load—a contention the district court rejected. In particular, Mr. Schulenberg relies on Mr. Wallace's deposition testimony as support for his position the load was not included in the measurement.

At Mr. Wallace's deposition, taken three years after the incident, he had no independent recollection of his inspection of the track after Mr. Schulenberg's

---

[5] Mr. Sutterfield's statement after the incident said he was bounced out of his seat.

18

accident. Instead, Mr. Wallace testified as to his general practice for measuring a deviation of a rail in a 62-foot chord. Mr. Schulenberg argues that portions of Mr. Wallace's deposition testimony support an inference that Mr. Wallace failed to account for additional deflection under load when measuring the deviation in the rail. Ultimately, we need not decide whether the ambiguities in Mr. Wallace's deposition testimony create a dispute of fact regarding whether the 1 5/8 inch measurement included the deflection under load because, as we now explain, even granting Mr. Schulenberg that inference, he cannot survive summary judgment.[6]

---

[6] Mr. Schulenberg also argues that BNSF's reliance on the deposition of Roger Honeycutt is improper because Mr. Honeycutt lacked personal knowledge of the subject information. Similarly, Mr. Schulenberg contends the inspection report showing a deviation of 1 5/8 inches was not based on first-hand knowledge because it was completed by James Sadler with information supplied to him by Mr. Wallace. These arguments are unpreserved—while Mr. Schulenberg did assert the inspection report was based on hearsay, he did not make a personal knowledge challenge to the inspection report or Mr. Honeycutt's declaration. Therefore, in the absence of any claim of plain error, we will not consider these arguments on appeal. *See United States v. Roach*, 896 F.3d 1185, 1192 (10th Cir. 2018), *petition for cert. filed*, No. 18-6804 (Nov. 26, 2018).

Additionally, Mr. Schulenberg's challenge to this evidence does not create a dispute of material fact. "'[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial' and entitles the movant to judgment as a matter of law." *Digital Ally, Inc. v. Util. Assocs., Inc.*, 882 F.3d 974, 977 (10th Cir. 2018) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). As discussed in the text, irrespective of Mr. Honeycutt's declaration and with the benefit of the deviation shown in the inspection report, Mr. Schulenberg has not put forth sufficient material facts to survive summary judgment. If we were to grant Mr. Schulenberg's challenge to the inspection report, Mr. Schulenberg would be in a worse position—asking the jury to infer a 2 1/4 inch deviation under load without the benefit of the measurement in the report, rather than asking the jury to infer there is an additional 5/8 inch deviation under load.

b. *Mr. Schulenberg's ability to show negligence* per se

Because Mr. Schulenberg bears the burden of proving BNSF was negligent *per se* based on a violation of the 2 1/4 inch deviation standard in 49 C.F.R. § 213.63, BNSF can prevail on summary judgment by establishing that Mr. Schulenberg "cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). Mr. Schulenberg claims he has raised a dispute of material fact by pointing to Mr. Schulenberg's and Mr. Sutterfield's deposition testimony about the severity of the bottoming out incident and Mr. Wallace's failure to take proper measurements after the incident. Under the facts of this case, we disagree.

Based on Mr. Schulenberg's and Mr. Sutterfield's testimony, Mr. Schulenberg has raised at least a dispute of fact that the bottoming out incident was severe in comparison to other incidents those two men previously encountered. Additionally, as discussed above, we assume without deciding that Mr. Schulenberg has raised a dispute of material fact that Mr. Wallace's 1 5/8 inch deviation measurement did not account for the track under load. Mr. Schulenberg argues that the combination of these facts is enough to survive summary judgment: "Taken with the description of the incident by [Mr. Schulenberg] and [Mr.] Sutterfield," Mr. Wallace's failure to properly measure the dip "leads to [the] inference that the dip was substantially greater [than] 1 5/8 inches and would permit a reasonable jury to conclude that the track at the time [Mr. Schulenberg] was injured was in violation of the maximum amount of deviation from 'uniform profile'" allowed by 49 C.F.R. § 263.13 (a). Schulenberg's Br. at 34–35.

20

In support of this argument, Mr. Schulenberg cites to a district court case reaching a similar conclusion: *Cowden v. BNSF Ry. Co.* (*Cowden II*), 975 F. Supp. 2d 1005 (E.D. Mo. 2013). In *Cowden II*, the railroad inspector measured the rail deviation within the 62-foot chord at 2 1/4 inches—the exact deviation allowed by 49 C.F.R. § 213.63 for the Class 3 track at issue in that case. 975 F. Supp. 2d at 1016–17. The district court found the plaintiff had raised a genuine issue of material fact because "a reasonable jury could conclude that [the inspector's] measurements failed to account for potential deflection" and that based upon the expert's report, "a reasonable jury could conclude that the measurements would not have complied with § 213.63 if [the inspector] had taken deflection into account." *Id.* at 1018. In relevant part, the expert's opinion stated that if the inspector had measured the track under load, it would have certainly been greater than the 2 1/4 inch deviation measured not under load. *Id.* That is, deviation under load is greater than deviation when the track is not under load.

There are two significant differences between *Cowden II* and this case. First, the district court there held the expert's report satisfied Rule 702. *Id.* Second, and more importantly, the measurement taken when the track was not under load was the *exact* total deviation allowed for the track. *Id.* at 1016–17. Therefore, as long as the jury could reasonable infer that there is *any* additional deflection under load, the jury could also reasonably conclude the track did not meet the § 213.63 standards.

Such is not the case here. Mr. Wallace measured the deviation at 1 5/8 inches. Even assuming, as Mr. Schulenberg argues, this measurement did not include the

21

deflection under load, he must still come forward with evidence from which the jury could find the deviation under load was greater than 2 1/4 inches. The only evidence Mr. Schulenberg raises in support of that conclusion is the testimony about the relative severity of the bottoming out incident. Essentially, Mr. Schulenberg contends the jury could reasonably infer that the severity of the bottoming out shows the additional deviation under load exceeded 5/8 of an inch. We are not persuaded such an inference would be reasonable; to reach a conclusion as to the precise deflection under load, the jury would be forced to speculate.

"A long line of FELA cases reiterate the lesson that the statute vests the jury with broad discretion to engage in common sense inferences regarding issues of causation and fault." *Harbin v. Burlington N. R.R. Co.*, 921 F.2d 129, 132 (7th Cir. 1990). But "FELA claims, like common law negligence claims, must be supported by expert testimony where they involve issues . . . beyond the common experience and understanding of the average jury." *In re Amtrak "Sunset Ltd." Train Crash in Bayou Canot, Ala., on Sept. 22, 1993*, 188 F. Supp. 2d 1341, 1349 (S.D. Ala. 1999).

Mr. Schulenberg is not asking the jury to make "common sense inferences." From the anecdotal testimony about the severity of the bottoming out, Mr. Schulenberg expects the jury to infer (1) the severity of the bottoming out was caused by a deviation in the rail in a 62-foot chord measurement and (2) the severity of the bottoming out shows that the additional deviation under load exceeded 5/8 of an inch. But there is no evidence in the record establishing the relative severity of the bottoming out incident compared to the severity of other incidents where the

22

deflection under load was measured. Indeed, there is no evidence tying

Mr. Sutterfield's past bottoming out experiences with a deviation in the rail in a

62-foot chord at all. Thus, there is no evidence from which the jury could infer that

his prior bottoming out experiences were related to such a deviation, let alone that his

past experiences had any bearing on whether this incident was caused by such a

deviation. While a jury might make a common sense inference that there is *some*

additional deviation in the rail in a 62-foot chord when the track is under load, there

is no evidence from which a jury could reasonably infer that the additional deviation

in this case exceeded 5/8 of an inch. Nor is the additional deviation under load within

"the common experience and understanding of the average jury."

"[M]ere speculation [will] be not allowed to do duty for probative facts."

*Metcalf*, 491 F.2d at 895 (quoting *Tennant*, 321 U.S. at 32–33). The anecdotal

severity of the bottoming out incident does not supply the probative facts necessary

to find that the additional deviation under load would have exceeded 5/8 of an inch

without engaging in mere speculation. As a result, there is a "lack of evidence for

[Mr. Schulenberg] on an essential element of [his] claim," *Felkins*, 774 F.3d at 653

(quotation marks omitted), and BNSF is entitled to judgment as a matter of law.

### III.   CONCLUSION

The district court did not abuse its discretion in excluding Mr. Blackwell as an

expert witness. The district court also correctly granted summary judgment for BNSF

because Mr. Schulenberg failed to present evidence from which the jury could find,

23

without speculation, that the track had a deviation of more than 2 1/4 inches in a 62-foot chord. Therefore, we AFFIRM the district court's rulings.