FILED
United States Court of Appeals
Tenth Circuit

March 29, 2021

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

NICOLE WELLS,

      Plaintiff - Appellant,

v.

KAWASAKI MOTORS CORP., U.S.A., a
Delaware corporation; KAWASAKI
HEAVY INDUSTRIES, a Japanese
corporation,

      Defendants - Appellees.

20-4004
(D.C. No. 2:16-CV-01086-DN)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **LUCERO**, and **CARSON**, Circuit Judges.
_____

Nicole Wells suffered severe internal abdominal injuries from an underwater

stream of high-pressured water emitted from a Kawasaki personal watercraft ("PWC")

(commonly called a jet ski[1]) after she fell backwards off the PWC during acceleration. In

her ensuing lawsuit, she argues that the PWC seat was defectively designed and that

Kawasaki Motors Corp., U.S.A. and Kawasaki Heavy Industries, Ltd. (collectively,

"Kawasaki") were negligent in relying on warnings to prevent these injuries. She

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] The parties use the term PWC. We follow this convention.

designated Dr. Anand Kasbekar[2] as her expert on the alleged design defects and Ms. Joellen Gill as her expert on the warnings' ineffectiveness. Kawasaki moved to exclude the proposed testimony of both experts. The district court granted the motions, concluding that both experts' opinions were unreliable and that Ms. Gill further lacked the qualifications to give her proposed opinions. Wells appeals from this order as well as a later one granting Kawasaki summary judgment. We affirm.

## BACKGROUND

### I. Factual Background

#### A. The Fall and the Injuries

In summer 2015, sixteen-year-old Nicole Rider (now Nicole Wells) was vacationing with family members and others at Lake Powell, a reservoir occupying many square miles in Utah and Arizona. The vacationers had rented Kawasaki 2013-model PWCs, and while riding as a passenger, Wells fell backward off one. The parties dispute what happened. Wells contends that she sat down on the PWC's rear end in the passenger seat, held on tightly, and slid backward and fell into the water when the driver accelerated from a stop. Kawasaki disputes that Wells was either sitting or holding on.

Soon afterward, Wells sought treatment from a nearby hospital for sharp lower abdominal pain. She learned that the pain was from "shocking" internal injuries, Appellant's Opening Br. at 2 (quoting Appellant's App. vol. XVI at 3955), which

---

[2] Dr. Kasbekar holds a Ph.D. in mechanical engineering and material science from Duke University.

included a ten-centimeter tear at the end of her large intestine, caused by the PWC's

emitted jet of water, which had "shot [water] up" her rectum,[3] Appellant's App. vol. VIII

at 1715. As part of her injuries, Wells had a significant amount of feces and air injected

into her abdominal cavity. She endured a colostomy to divert fecal material from the

large intestine "into a bag or pouch attached to the abdomen." Colostomy, John Hopkins

Med., https://www.hopkinsmedicine.org/health/treatment-tests-and-

therapies/colostomy (last visited Mar. 5, 2021). Otherwise, the fecal matter would have

contaminated the areas needing to be healed.

B.    Kawasaki's Warnings

For decades, PWC manufacturers have known that PWC riders are at risk for these

sorts of injuries. Since 2001, they have warned of this risk and others, in a large,

standardized on-product label, which was developed with input from several

stakeholders, including the United States Coast Guard. This label was located on the back

of Kawasaki's 2013 PWCs and was a critical component of Kawasaki's warning system.

The label has a bright-orange, bolded heading: "WARNING." Response Br. of Appellees

at 9 (citing Appellant's App. vol. X at 2305). Below this warning heading comes this:

> **WEAR PROTECTIVE CLOTHING**: Severe internal injuries can occur if
> water is forced into body cavities as a result of falling into water or being
> near jet thrust nozzle. Normal swimwear does not adequately protect against
> forceful water entry into rectum or vagina. All riders must wear a wet suit

---

[3] When PWC jets are directed at pelvic cavities (i.e., the vagina or the rectum), the jets can cause "severe physical trauma, sometimes with permanent damage to sensitive internal tissues and/or organs." Appellant's Opening Br. at 3 (quoting Appellant's App. vol. XVI at 3917). Researchers have suggested that the risk of these injuries is greater for passengers, who are, among other things, not supplied with engine-shutoff lanyards like drivers are.

bottom or clothing that provides equivalent protection (see Owner's Manual).

*Id.* at 9–10 (quoting Appellant's App. vol. X at 2305). The label contains an infographic (shown below) depicting a PWC rider wearing a wet-suit bottom, with a caption identifying it. *Id.* at 9.



Kawasaki also provided the protective-clothing warning in an instructional video, and in its owner's manual. The manual warns in even more detail, adding, for instance, that "[w]et suits are made of a thick material (neoprene) that significantly retards the velocity of water passing through it" and that "[n]ormal swim wear will not adequately protect you." Appellant's App. vol. IX at 2144. Despite the warnings, Wells was riding the PWC in an ordinary bathing suit.

## C.  Kawasaki's PWC Seats

Key to Wells's case is that for 2013 PWCs, Kawasaki produced two seat options—a standard seat and a luxury ("LX") seat, which provided more hip support. The model Wells was riding offered only the standard seat. Kawasaki maintains that the LX seat was a comfort, not a safety, feature.

4

## II.     Procedural Background

Wells sued Kawasaki for causing her abdominal injuries.[4] She alleges negligent

and strict-liability design defects, arguing that "a redesigned seat" (with a hip support like

that on the LX seat) "was feasible and would reduce the risk of [orifice injuries] by

making it less likely that a passenger would slide off the rear of the PWC and into the

path of the jet thrust." Appellant's Opening Br. at 5. In addition, she contends that "it was

negligent [for Kawasaki] to rely on warnings to protect passengers from this risk, since

manufacturers knew or should have known that warnings were completely ineffective in

changing the behavior of PWC users."[5] *Id.* She relied on Dr. Kasbekar as the expert for

the first theory and Ms. Gill for the second.

Kawasaki moved to exclude the proffered expert testimony of both Dr. Kasbekar

and Ms. Gill, and then sought summary judgment based on Wells's inability to show a

dispute of material fact without these experts' testimony. The district court granted all of

Kawasaki's motions. It reasoned that both proposed expert opinions were unreliable and

that Ms. Gill was also unqualified to assert her proposed opinions. Then the court granted

summary judgment for Kawasaki, ruling that "[a]bsent expert testimony, Plaintiffs'

design defect and failure to warn claims fail." Appellant's App. vol. I at 0282. Wells

---

[4] Wells also sued the PWC rental company but these claims have since settled.

[5] Kawasaki argues that the Complaint does not allege this theory. We do not address this issue because we affirm on other grounds. *See Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1256 (10th Cir. 2011) ("[T]his court may affirm on any ground apparent in the record." (citations omitted)).
Wells had also claimed breach of warranty but in her opposition to summary judgment, she conceded to dismissing this.

timely filed this appeal challenging all three decisions. We review, exercising jurisdiction under 28 U.S.C. §§ 1291 and 1332–33.

## DISCUSSION

Wells contests the exclusion of her experts' testimony and the associated grant of summary judgment for Kawasaki. We first address the exclusion of Dr. Kasbekar's expert opinion; then Ms. Gill's; and last, the propriety of granting summary judgment.

## I.    Exclusion of Expert Testimony

"We review de novo 'whether the district court employed the proper legal standard and performed its gatekeeper role' in determining whether to admit or exclude expert testimony." *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (quoting *United States v. Rodriguez–Felix*, 450 F.3d 1117, 1122 (10th Cir. 2006)). "We review for abuse of discretion the manner in which the district court performs this gatekeeping role." *Id.* (citing *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1223 (10th Cir. 2003)). Under this standard, we do "not disturb the district court's ruling unless it is 'arbitrary, capricious, whimsical or manifestly unreasonable' or when we are convinced that the district court 'made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'" *Dodge*, 328 F.3d at 1223 (quoting *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1163–64 (10th Cir. 2000)).

Rule 702 of the Federal Rules of Evidence permits expert testimony when the witness "is qualified as an expert by knowledge, skill, experience, training, or education" and four factors are met: (1) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in

6

issue"; (2) "the testimony is based on sufficient facts or data"; (3) "the testimony is the product of reliable principles and methods"; and (4) "the expert has reliably applied the principles and methods to the facts of the case."

The reliability prong "requires the court to determine whether the expert's opinions are supported by sound reasoning and methodology." *Delsa Brooke Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1172 (10th Cir. 2020) (citing *F & H Coatings, LLC v. Acosta*, 900 F.3d 1214, 1222 (10th Cir. 2018)). Expert testimony must have "a reliable basis in the knowledge and experience of [the relevant] discipline," *Dodge*, 328 F.3d at 1221–22 (alteration in original) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999)), and be based "on actual knowledge, not 'subjective belief or unsupported speculation,'" *id.* at 1222 (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993)). In *Daubert*, the Supreme Court listed four non-exclusive factors to consider when assessing reliability, which we have summarized as this:

> (1) [W]hether the opinion at issue is susceptible to testing and has been subjected to such testing; (2) whether the opinion has been subjected to peer review; (3) whether there is a known or potential rate of error associated with the methodology used and whether there are standards controlling the technique's operation; and (4) whether the theory has been accepted in the [relevant] community.

*Id.* (citing *Daubert*, 509 U.S. at 593–94). As noted, "the test of reliability is 'flexible,' and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Kumho Tire Co.*, 526 U.S. at 141.

The relevance prong of Rule 702 "encompasses [the rule]'s requirement that the evidence '[help] the trier of fact to understand the evidence or to determine a fact in

issue.'" *Delsa Brooke Sanderson*, 976 F.3d at 1172 (second alteration in original) (quoting *Daubert*, 509 U.S. at 591). "In essence, the question is 'whether [the] reasoning or methodology properly can be applied to the facts in issue.'" *Rodriguez–Felix*, 450 F.3d at 1123 (alteration in original) (quoting *Daubert*, 509 U.S. at 593).

## A.    Exclusion of Dr. Kasbekar's Proposed Expert-Opinion Testimony

Wells first challenges the exclusion of Dr. Kasbekar's proffered opinion that Wells would have been less likely to fall had Kawasaki equipped her PWC with the LX seat. To reach this conclusion, Dr. Kasbekar employed a drag test he had designed. For this, he weighted a bag to Wells's summer-2015 weight, covered it in bathing-suit material to replicate what Wells had been wearing and placed the bag on a PWC seat. Then, he used a cable-and-pulley system to measure the force needed to slide the bag from the seat. After three tests of each seat, he used basic physics formulas to calculate the acceleration needed to produce this force. Based on this, Dr. Kasbekar opined that Wells would have slid on the standard seat within the acceleration capacity of the PWC, but that she would not have slid (and thus fallen) had she instead sat on the LX seat.

The district court ruled that this seat-testing method was unreliable, after noting that it had not been subjected to peer review and had no known rate of error. The court ruled that Dr. Kasbekar's deposition testimony alone could not establish that the method was reliable.

Even if we believed that Dr. Kasbekar's method was reliable, that would not suffice to show that the district court abused its discretion in concluding otherwise. *Cf. Dodge*, 328 F.3d at 1223 (describing an abuse of discretion as a decision that is

8

"arbitrary, capricious, whimsical or manifestly unreasonable"; "a clear error of judgment"; or beyond "the bounds of permissible choice in the circumstances" (quoting *Atl. Richfield Co.*, 226 F.3d at 1163–64)). No peer-reviewed literature supports that this method should be used to test seat design and the rate of error is unknown. The district court need not have found Dr. Kasbekar's proposed expert opinion reliable based only on his testimony. *Cf. Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.").[6]

## B.     Exclusion of Ms. Gill's Proposed Expert-Opinion Testimony

Next, Wells challenges the exclusion of Ms. Gill's proposed opinion concerning Kawasaki's warnings. Wells offered this expert testimony to support her claim that "it was negligent to rely only on warnings to protect passengers from [the risk of orifice injuries], since manufacturers knew or should have known that warnings were completely ineffective in changing the behavior of PWC users." Appellant's Opening Br. at 5. First, Wells contends that the district court failed in its gatekeeping role by not examining the

---

[6] Wells suggests that Dr. Kasbekar's test results were consistent with what is shown in two items of evidence Kawasaki produced: (1) a video which, according to Dr. Kasbekar, shows that PWC passengers slide backward during acceleration, and (2) computer simulations replicating passenger falls from PWCs. But Wells misses the mark because neither of these show that a passenger is less likely to slide backward off a PWC when it has an LX seat, as Dr. Kasbekar proposes opining.

As additional support for Dr. Kasbekar's opinion, Wells offers this quotation from his expert report: "Kawasaki's own 2013 marketing information related to the alternative seat design . . . indicates that 'Thanks to its well engineered seat steps riders feel much more connected to the watercraft under hard acceleration.'" Appellant's App. vol. XV at 3656. But marketing information is merely puffery and this marketing does not establish that the LX seat would likely have prevented Wells's injuries.

admissibility of Ms. Gill's ultimate "primary opinion." *Id.* at 23, 26. By this, she means that given the nature of the risk, "the *decision to rely on warnings* to protect users from this hazard was a violation of established safety principles." *Id.* at 25. She faults Kawasaki for not seeking a design solution. *See id.* at 26 ("There are some cases where a warning is not the appropriate solution. There has to be a design solution."); Appellant's Reply Br. at 9 ("Taken together, Ms. Gill's opinion was that the decision to rely on warnings to protect users from the risk of orifice injury was the Kawasaki Defendants' main violation"); Appellant's App. vol. I at 0173 ("Fundamentally, Ms. Gill is of the opinion that (1) Defendants' warnings on the [PWC] were insufficient to keep Ms. Wells reasonably safe from harm, and (2) the manner in which people typically use and experience the [PWC] render warnings of any kind ineffective in mitigating the danger posed by the device.").

The district court described Ms. Gill's proposed opinion as follows:

[Kawasaki] should have known that its warnings and instructions were defective and likely to be ineffective because

  a.  Many riders would not see or read the Owner's Manual and Operating Instructions;

  b.  Users would not find and choose to read the on-product label that warns of the subject hazard because of its location, its lengthiness/excessive verbiage, and because it contains information that is in contradiction to what is commonly observed and so forth—leading to [Ms.] Gill's conclusion that the label would not likely motivate users to wear protective clothing; and

  c.  The on-product label warning . . . is ambiguous as to the meaning of equivalent protection.

10

Appellant's App. vol. I at 0274 (citations, internal quotation marks, and footnote omitted).

Even if the district court somehow failed in its gatekeeper obligation, and if Wells in fact preserved this issue for appeal, we would conclude that the district court did not abuse its discretion in excluding Ms. Gill's primary opinion. *See Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1256 (10th Cir. 2011) ("[T]his court may affirm on any ground apparent in the record." (citations omitted)). This is so because the opinion is unreliable. First, it is based in part on the opinion that Kawasaki's warnings were deficient and ineffective, but as explained below, the court acted within its discretion in rejecting that view. Second, this primary opinion presupposes that an alternative design existed, but no data supports this assumption. *Cf. Yonts v. Easton Technical Prods., Inc.*, 676 F. App'x 413, 418 (6th Cir. 2017) ("It is misleading to put so much weight on potential design alternatives when there is no evidence that feasible alternatives exist and minimal evidence that [the company] has not pursued any."). Dr. Kasbekar's proposed testimony on an alternative design is inadmissible, and Ms. Gill has not examined other design solutions and offers no opinion on this topic.[7]

Next, Wells argues that the district court erred in finding that Ms. Gill lacked qualifications for that part of her opinion the court did address and in finding that this was unreliable. We do not address Ms. Gill's qualifications. Instead, we affirm the court's ruling on reliability.

---

[7] Moreover, Ms. Gill stated that she is not a design engineer.

The court summarized that the opinion was unreliable for this reason: "Instead of offering an opinion that has been subjected to the rigors of testing, peer review, and acceptance throughout a broader community, Plaintiff is proposing that Ms. Gill present an opinion based on generalized studies of warning labels and a limited subset of deponents—all without independent testing." Appellant's App. vol. I at 0278. Even though Ms. Gill has relevant experience with warnings and cites some general studies of warning labels, we discern no abuse of discretion in the district court's decision to exclude her testimony because of insufficient factual support. *See Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2005) ("[A] plaintiff must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements." (quoting *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir.1999)). Ms. Gill cites merely a few deponents' testimony and one article on PWC warnings to support her point that consumers would not locate and read the on-product label, and cites no research or data to support her other points.

## II.    Summary Judgment

Finally, Wells asks that we reverse the summary judgment order if we reverse the exclusion of her experts. We review this issue de novo, *Schulenberg v. BNSF Ry.*, 911 F.3d 1276, 1285 (10th Cir. 2018) (citation omitted), and will find for Wells only if she "shows that there is no genuine dispute as to any material fact and [that she] is entitled to judgment as a matter of law," *id.* (quoting Fed. R. Civ. P. 56(a)). Wells has not argued that a genuine dispute of material fact exists if Dr. Kasbekar's and Ms. Gill's opinions are

inadmissible. Because we affirm the rulings that these are inadmissible, we affirm the order of summary judgment for Kawasaki as well.

## CONCLUSION

For the foregoing reasons, we affirm.

Entered for the Court


Gregory A. Phillips
Circuit Judge